IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

SURENDRA MOHAN KUMAR, M.D.,          *
et al.,
                                     *
        Plaintiffs,
                                     *
v.                                              Civil Action No. GLR-21-735
                                     *
CHARLES MAHONE, et al.,
                                     *
        Defendants.

                              ***

## **MEMORANDUM OPINION**

THIS MATTER is before the Court on Defendants Maryland CVS Pharmacy, LLC (improperly identified in the Complaint as "CVS, LLC"), Charles Mahone, Joan Deluca, and Sedgwick Claims Management Services, Inc.'s (improperly identified in the Complaint as "IT Department of Sedgwick, Inc.")[1] Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(2) for Lack of Personal Jurisdiction over Defendants Joan Deluca and Sedgwick Claims Management Services, Inc. or, in the alternative, Motion to Dismiss for Failure to State a Claim pursuant to Fed. R. Civ. P. 12(b)(6) or, in the alternative, Motion for More Definite Statement Pursuant to Fed. R. Civ. P. 12(e) and Motion to Strike Pursuant to Fed. R. Civ. P. 12(f) (ECF No. 30), and Plaintiffs Surendra Mohan Kumar, M.D., and Neeta Abrol Kumar's Motion for Summary Judgment (ECF No. 39). The Motions are ripe for disposition, and no hearing is necessary. See Local Rule 105.6 (D.Md.

---

[1] The Clerk will be directed to correct the names of Defendants.

2021). For the reasons set forth below, the Court will grant Defendants' Motion and deny Plaintiffs' Motion.

## I.   BACKGROUND[2]

### A.   <u>Factual Background</u>

On the afternoon of January 8, 2020, Plaintiff Surendra Mohan Kumar, M.D. ("Dr. Kumar"), visited a pharmacy operated by CVS Pharmacy, LLC ("CVS"), in Crofton, Maryland (the "Pharmacy"). (Pls.' Original Pet. ["Compl."] at 3, ECF No. 1-1).[3] Defendant Charles Mahone was the manager of the Pharmacy. (<u>Id.</u> at 2). Dr. Kumar visited the Pharmacy intending to convert certain digital media he possessed into thirty physical pictures and a DVD video. (<u>Id.</u> at 3). For reasons that are not clear, Mahone "snatched" the photographs from Dr. Kumar, refused to ring him up, became loud and belligerent, and asked Dr. Kumar to leave the Pharmacy. (<u>Id.</u> at 5). Dr. Kumar refused, demanding that Mahone first give him the photographs he printed. (<u>Id.</u>). Mahone responded by calling 9-1-1. (<u>Id.</u>).

During his call with 9-1-1, Mahone made unspecified false statements regarding Dr. Kumar. (<u>Id.</u>). After the police arrived, Dr. Kumar explained the incident to them. (<u>Id.</u> at 7). The police did not review the video footage or direct Mahone to allow Dr. Kumar to pay

---

[2] Unless otherwise noted, the Court takes the following facts from Plaintiffs' Complaint and accepts them as true. <u>See</u> <u>Erickson v. Pardus</u>, 551 U.S. 89, 94 (2007).

[3] The electronic document accessible at ECF No. 1-1 contains the Complaint and multiple exhibits to the Complaint. The Complaint may be found at pp. 4–16 of ECF No. 1-1 and will be referred to by the pagination assigned by Plaintiffs at the bottom of each page. References to exhibit page numbers refer to the pagination assigned by the Court's Case Management/Electronic Case Files ("CM/ECF") system.

for the photographs he had printed. (Id.). Instead, they requested that Dr. Kumar leave the Pharmacy. (Id.).

Sedgwick Claims Management Services, Inc. ("Sedgwick") is a claims management service that administers general liability claims against CVS. (Id. at 30). Joan Deluca[4] is a Sedgwick agent. (Id.). Thus, Sedgwick and Deluca became involved in this action by dint of their responsibility to respond to Dr. Kumar's prelitigation communications concerning his allegations against CVS and Mahone. (Id.). Dr. Kumar asserts that Defendants refused to provide him the video footage of the incident at the Pharmacy. (Id. at 3–4). Similarly, Dr. Kumar alleges that Defendants made certain false accusations about him, including that he was abusive toward his former attorney and that he had sent Deluca an email containing a virus. (Id. at 6). Plaintiffs allege that Deluca and Sedgwick repeatedly refused to respond to their requests to resolve this dispute, and instead directed Dr. Kumar to "file a lawsuit." (Id. at 27).

As a result of Defendants' actions, Dr. Kumar alleges that he has suffered various bad outcomes. Dr. Kumar asserts that his morale and self-esteem have been damaged, he has experienced nausea, and he has lost weight. (Id. at 7). Plaintiff Neeta Abrol Kumar ("Ms. Kumar") alleges that Dr. Kumar has become "moody, anxious, depressed at times, laying around a lot, [i]nsomnia at night and day time hypersomnia." (Id. at 9). Ms. Kumar

---

[4] Plaintiffs occasionally spell Deluca's last name with a capital L, i.e., "DeLuca." (See, e.g., Compl. at 1). The documents enclosed with the Complaint reflect that Deluca is the correct spelling and capitalization. (See id. at 30). Accordingly, the Court will refer to her as Deluca.

also provides details regarding an apparent loss of consortium, including that Plaintiffs have ceased being intimate. (Id.).

**B.    Procedural History**

On or about June 17, 2020, Plaintiffs initiated this action by filing a self-represented Complaint in the Superior Court of Kent County, Delaware. (ECF No. 1-1). Plaintiffs allege nine counts against Mahone and CVS: public humiliation (Count I); slander (Count II); libel (Count III); embarrassment (Count IV); mental trauma, anguish, obstruction of justice, intentional infliction of emotional distress ("IIED"), and negligent infliction of emotional distress ("NIED") (Count V); breach of contract (Count VI); breach of privacy (Count VII); obstruction of justice (Count VIII); and invasion of privacy (Count IX).[5] (Compl. at 5). Plaintiffs allege an additional four counts against Deluca and Sedgwick: libel (Count X); obstruction of justice (Count XI); false, fraudulent allegation (Count XII); and contempt (Count XIII). (Id. at 6). Plaintiffs seek damages, litigation costs and attorney's fees, and injunctive relief. (Id. at 11–12).

On July 23, 2020, Defendants removed the action to the United States District Court for the District of Delaware. (ECF No. 1). On March 23, 2021, the United States District Court for the District of Delaware transferred the case to this Court. (ECF Nos. 16, 17). Before the transfer of venue, the parties had fully briefed two motions: Defendants' Motion to Dismiss or for a More Definite Statement (ECF No. 3), and Plaintiffs' Motion for Summary Judgment (ECF No. 9). The United States District Court for the District of

---

[5] Plaintiffs have not clearly ordered their counts. The Court does so here to avoid confusion.

Delaware denied both motions without prejudice upon transferring this action to this Court. (ECF No. 16). On April 30, 2021, in response to an Order by this Court, the parties filed a status report informing the Court that they intended to file additional dispositive motions. (ECF No. 28).

On May 24, 2021, Defendants filed a Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(2) for Lack of Personal Jurisdiction over Defendants Joan Deluca and Sedgwick Claims Management Services, Inc. or, in the alternative, Motion to Dismiss for Failure to State a Claim pursuant to Fed. R. Civ. P. 12(b)(6) or, in the alternative, Motion for More Definite Statement Pursuant to Fed. R. Civ. P. 12(e) and Motion to Strike Pursuant to Fed. R. Civ. P. 12(f) ("Motion to Dismiss"). (ECF Nos. 30, 31). Plaintiffs filed an Opposition on June 14, 2021 (ECF No. 34). Defendants filed a Reply on June 23, 2021. (ECF No. 37). Plaintiffs filed an unauthorized Surreply on July 7, 2021. (ECF No. 38).[6]

The following day, Plaintiffs filed a Motion for Summary Judgment. (ECF No. 39). Defendants opposed the Motion on July 14, 2021, (ECF No. 40), and Plaintiffs filed a Reply on July 20, 2021, (ECF No. 41).

---

[6] Surreply memoranda may only be filed with leave of the Court. See Local Rule 105.2(a) (D.Md. 2021). Although a district court has discretion to allow a surreply, surreplies are generally disfavored in this District. Chubb & Son v. C.C. Complete Servs., LLC, 919 F.Supp.2d 666, 679 (D.Md. 2013). A surreply may be permitted "when the moving party would be unable to contest matters presented to the court for the first time in the opposing party's reply." Khoury v. Meserve, 268 F.Supp.2d 600, 605 (D.Md. 2003), aff'd, 85 F.App'x 960 (4th Cir. 2004). Plaintiffs have not sought leave to file their Surreply, much less attempted to make the requisite showing under Khoury. Id. In view of Plaintiffs' self-represented status, however, the Court will consider the Surreply in resolving Defendants' Motion.

## II.    DISCUSSION

**A.    Defendants' Motion**

**1. Standards of Review**

**a.    Rule 12(b)(2)**

When a court's power to exercise personal jurisdiction over a nonresident defendant is challenged by a motion under Federal Rule of Civil Procedure 12(b)(2), "the jurisdictional question is to be resolved by the judge, with the burden on the plaintiff ultimately to prove grounds for jurisdiction by a preponderance of the evidence." Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc., 334 F.3d 390, 396 (4th Cir. 2003) (citing Mylan Labs., Inc. v. Akzo, N.V., 2 F.3d 56, 59–60 (4th Cir. 1993)). If the existence of jurisdiction turns on disputed facts, the court may resolve the challenge after a separate evidentiary hearing, or may defer ruling pending receipt at trial of evidence relevant to the jurisdictional question. Combs v. Bakker, 886 F.2d 673, 676 (4th Cir. 1989). If the court chooses to rule without conducting an evidentiary hearing, relying solely on the basis of the complaint, affidavits, and discovery materials, "the plaintiff need only make a prima facie showing of personal jurisdiction." Carefirst, 334 F.3d at 396; see also Mylan Labs., 2 F.3d at 60; Combs, 886 F.2d at 676. In determining whether the plaintiff has proven a prima facie case of personal jurisdiction, the court "must draw all reasonable inferences arising from the proof, and resolve all factual disputes, in the plaintiff's favor." Mylan Labs., 2 F.3d at 60; Carefirst, 334 F.3d at 396. As set forth above, in resolving motions brought under Federal Rule of Civil Procedure 12(b)(2), the court may consider evidence

outside the pleadings. <u>Structural Pres. Sys., LLC v. Andrews</u>, 931 F.Supp.2d 667, 671 (D.Md. 2013).

Personal jurisdiction may be established through either of two avenues. If the defendant's contacts with the forum state form the basis for the suit, they may establish "specific jurisdiction." <u>Carefirst</u>, 334 F.3d at 397. In determining whether specific jurisdiction exists, a court must consider: (1) the extent to which the defendant has purposefully availed itself of the privilege of conducting activities in the state; (2) whether the plaintiff's claims arise out of those activities directed at the state; and (3) whether the exercise of personal jurisdiction would be constitutionally "reasonable." <u>Id.</u>; <u>see also</u> <u>ALS Scan, Inc. v. Digital Serv. Consultants, Inc.</u>, 293 F.3d 707, 711–12 (4th Cir. 2002); <u>Helicopteros Nacionales de Colombia, S.A. v. Hall</u>, 466 U.S. 408, 414 n.8 (1984). If, however, the defendant's contacts with the state are not also the basis for the suit, then jurisdiction over the defendant must arise from the defendant's general, more persistent, but unrelated contacts with the state. <u>Int'l Shoe Co. v. State of Wash.</u>, 326 U.S. 310, 318 (1945). To establish general jurisdiction, the defendant's "affiliations with the State [must be] so continuous and systematic as to render it essentially at home in the forum State." <u>Daimler AG v. Bauman</u>, 571 U.S. 117, 139 (2014) (quoting <u>Goodyear Dunlop Tires Operations, S.A. v. Brown</u>, 564 U.S. 915, 919 (2011).

Absent a federal statute specifying different grounds for personal jurisdiction, federal courts may exercise jurisdiction in the manner provided by state law. Fed.R.Civ.P. 4(k)(1)(A). "[F]or a district court to assert personal jurisdiction over a nonresident defendant, two conditions must be satisfied: (1) the exercise of jurisdiction must be

authorized under the state's long-arm statute; and (2) the exercise of jurisdiction must comport with the due process requirements of the Fourteenth Amendment." <u>Carefirst</u>, 334 F.3d at 396. With certain exceptions not at issue here, Maryland's long-arm statute provides for personal jurisdiction over a nonresident defendant to the extent the defendant:

> (1) Transacts any business or performs any character of work or service in the State;
> (2) Contracts to supply goods, food, services, or manufactured products in the State;
> (3) Causes tortious injury in the State by an act or omission in the State;
> (4) Causes tortious injury in the State or outside of the State by an act or omission outside the State if he regularly does or solicits business, engages in any other persistent course of conduct in the State or derives substantial revenue from goods, food, services, or manufactured products used or consumed in the State;
> (5) Has an interest in, uses, or possesses real property in the State; or
> (6) Contracts to insure or act as surety for, or on, any person, property, risk, contract, obligation, or agreement located, executed, or to be performed within the State at the time the contract is made, unless the parties otherwise provide in writing.

Md. Code Ann., Cts. & Jud. Proc. § 6-103(b). "[T]o the extent that a defendant's activities are covered by the statutory language, the reach of the statute extends to the outermost boundaries of the due process clause." <u>Dring v. Sullivan</u>, 423 F.Supp.2d 540, 545 (D.Md. 2006) (quoting <u>Joseph M. Coleman & Assocs., Ltd. v. Colonial Metals</u>, 887 F.Supp. 116, 118–19 n.2 (D.Md. 1995)).

### b. Rule 12(b)(6)

The purpose of a Rule 12(b)(6) motion is to "test[] the sufficiency of a complaint," not to "resolve contests surrounding the facts, the merits of a claim, or the applicability of

defenses." King v. Rubenstein, 825 F.3d 206, 214 (4th Cir. 2016) (quoting Edwards v. City of Goldsboro, 178 F.3d 231, 243 (4th Cir. 1999)). A complaint fails to state a claim if it does not contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed.R.Civ.P. 8(a)(2), or does not "state a claim to relief that is plausible on its face," Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. Though the plaintiff is not required to forecast evidence to prove the elements of the claim, the complaint must allege sufficient facts to establish each element. Goss v. Bank of Am., N.A., 917 F.Supp.2d 445, 449 (D.Md. 2013) (quoting Walters v. McMahen, 684 F.3d 435, 439 (4th Cir. 2012)), aff'd, 546 F.App'x 165 (4th Cir. 2013).

In considering a Rule 12(b)(6) motion, a court must examine the complaint as a whole, consider the factual allegations in the complaint as true, and construe the factual allegations in the light most favorable to the plaintiff. Albright v. Oliver, 510 U.S. 266, 268 (1994); Lambeth v. Bd. of Comm'rs of Davidson Cnty., 407 F.3d 266, 268 (4th Cir. 2005) (citing Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)). But the court need not accept unsupported or conclusory factual allegations devoid of any reference to actual events, United Black Firefighters v. Hirst, 604 F.2d 844, 847 (4th Cir. 1979), or legal conclusions couched as factual allegations, Iqbal, 556 U.S. at 678.

2.      **Analysis**

a.      **Jurisdictional Challenge**

Defendants are correct that Plaintiffs have not adequately pleaded a basis for personal jurisdiction in Maryland over Deluca or Sedgwick, either through general or specific jurisdiction. But to dismiss Plaintiffs' claims on that basis would be unjust. Defendants do not argue before this Court that Plaintiffs' contacts with Deluca and Sedgwick while Plaintiffs were located in Delaware, where Plaintiffs initially filed this lawsuit, were insufficient to establish personal jurisdiction in that state's courts. This action only moved to the courts of this state after the United States District Court for the District of Delaware <u>sua sponte</u> raised the issue of transfer of venue, and the self-represented Plaintiffs declined to object.

The Court will not cede jurisdiction over this part of this dispute on such a "gotcha" basis. As this Court has recognized, "federal courts generally may invoke the doctrine of ancillary jurisdiction . . . where necessary to permit disposition by a single court of claims that are factually interdependent." <u>United States v. McKnight</u>, 33 F.Supp.3d 577, 580 (D.Md. 2014). Plaintiffs' claims against Deluca and Sedgwick are factually interdependent on their claims against CVS and Mahone.

Alternatively, the Court may exercise pendent party jurisdiction over Plaintiffs' claims against Deluca and Sedgwick. The Fourth Circuit has adopted a tripartite test for determining whether a court may exercise pendent party jurisdiction.

> Three requirements must be satisfied for a proper exercise of pendent party jurisdiction: (1) the existence of a "common nucleus of operative fact" under U.S. Const. art. III, <u>United</u>

> Mine Workers v. Gibbs, 383 U.S. 715, 725, 86 S.Ct. 1130,
> 1138, 16 L.Ed.2d 218 (1966); (2) the absence of congressional
> negation of jurisdiction "expressly or by implication" in the
> relevant jurisdictional statute, Aldinger v. Howard, 427 U.S. 1,
> 18, 96 S.Ct. 2413, 2422, 49 L.Ed.2d 276 (1976); and (3) the
> existence of prudential concerns favoring the exercise of
> jurisdiction, Gibbs, 383 U.S. at 726, 86 S.Ct. at 1139.

Johnson v. Town of Elizabethtown, 800 F.2d 404, 407 (4th Cir. 1986). Here, there exists a common nucleus of operative fact, inasmuch as Plaintiffs' claims against Deluca and Sedgwick directly arise from and relate to their efforts to assert claims against CVS and Mahone; there has been no congressional negation of jurisdiction; and prudential concerns favor adjudicating the action together. For these reasons, the Court denies Defendants' Motion to the extent it is premised on Rule 12(b)(2).

### b.   Failure to State a Claim

#### i.   Counts I & IV: Public Humiliation and Embarrassment

Defendants assert that there exists no cognizable claim under Maryland law[7] for "public humiliation" and "embarrassment." Defendants are correct. While allegations of public humiliation and embarrassment may support other claims, they do not constitute standalone claims. Plaintiffs concede this point. (See Pls.' Counter Opp'n Br. Defs.' Att'ys Dismiss Pls.' Compl. Alt. Mot. More Definitive Statement & Strike Impertinent Immaterial

---

[7] Although neither party appears to contest the issue, Defendants correctly assume that Maryland law applies to Plaintiffs' claims. See Smith v. MTD Prods., Inc., No. CCB-19-1592, 2019 WL 5538273, at *2 (D.Md. Oct. 24, 2019) ("The lex loci delicti rule provides that 'the substantive tort law of the state where the wrong occur[s]' governs." (quoting Philip Morris v. Angeletti, 752 A.2d 200, 231 (Md. 2000))). As the bulk of the alleged wrongful actions forming the basis for Plaintiffs' Complaint occurred in Maryland, the Court will apply Maryland law.

& Scandalous Allegations ["Pls.' Opp'n"] at 6, ECF No. 34-1). Accordingly, the Court will dismiss Counts I and IV.

ii.    **Counts II & III: Slander and Libel by Mahone and CVS**

Counts II and III of the Complaint are claims against Mahone and CVS for slander and libel. Slander and libel are two forms of the tort of defamation. See Adam v. Wells Fargo Bank, N.A., No. ELH-09-2387, 2011 WL 3841547, at *16 n.23 (D.Md. Aug.26, 2011) ("The tort of defamation includes both libel (written defamation) and slander (oral defamation)."). This Court has described the standard for defamation claims in Maryland:

> Under Maryland law, to establish a prima facie case of defamation, a plaintiff must establish that (1) the defendant made a defamatory statement to a third person (a requirement known as publication); (2) the statement was false; (3) the defendant was legally at fault in making the statement; and (4) the plaintiff thereby suffered harm.

Doe v. Johns Hopkins Health Sys. Corp., 274 F.Supp.3d 355, 365 (D.Md. 2017).

Plaintiffs' defamation claims fail on the first, second, and third elements because neither the Complaint nor its underlying exhibits specify any of the allegedly false statements Defendants made. Plaintiffs make reference to a tape of a 9-1-1 call in which Mahone purportedly made false statements regarding Dr. Kumar, but do not specify what those statements are or why they are false. These allegations are therefore entirely inadequate to state a claim for which relief may be granted. For this reason, the Court will dismiss Counts II and III.

### iii.        Count V: Infliction of Emotional Distress

Count V of the Complaint alleges that Mahone and CVS are liable for mental trauma, anguish, obstruction of justice, IIED, and NIED. The Court will construe the Count as asserting claims for IIED and NIED.

In Maryland, to sufficiently state a claim for IIED, a plaintiff must allege: (1) conduct that is "intentional or reckless"; (2) conduct that is "extreme and outrageous"; (3) "a causal connection between the wrongful conduct and the emotional distress"; and (4) emotional distress that is "severe." Takacs v. Fiore, 473 F.Supp.2d 647, 651–52 (D.Md. 2007) (quoting Harris v. Jones, 380 A.2d 611, 614 (Md. 1977)). As to the second element, the standard for "extreme and outrageous" conduct is "quite high." Tyndall v. Berlin Fire Co., No. ELH-13-02496, 2015 WL 4396529, at *34 (D.Md. July 16, 2015). The conduct must be "so outrageous in character, and so extreme in degree," that it goes "beyond all possible bounds of decency." Arsham v. Mayor of Balt., 85 F.Supp.3d 841, 850 (D.Md. 2015) (quoting Harris, 380 A.2d at 614). Put differently, the conduct must "completely violate human dignity" and "strike to the very core of one's being, threatening to shatter the frame upon which one's emotional fabric is hung." Interphase Garment Sols., LLC v. Fox Television Stations, Inc., 566 F.Supp.2d 460, 466 (D.Md. 2008) (quoting Hamilton v. Ford Motor Credit Co., 502 A.2d 1057, 1064 (Md.Ct.Spec.App. 1986)).

Plaintiffs' IIED claim must fail because they have failed to allege that the conduct of Mahone or CVS was extreme and outrageous. At its core, Plaintiffs allege that Dr. Kumar printed photographs at the Pharmacy; that for some unspecified reason Mahone took the photographs from Dr. Kumar and thereafter failed to return them or allow Dr.

Kumar to pay for them; that he demanded Dr. Kumar leave the Pharmacy; and that after Dr. Kumar refused to leave the Pharmacy, Mahone called the police and made false statements to them. Assuming the truth of these allegations and construing them in the light most favorable to Plaintiffs, they describe conduct that was certainly inappropriate, but which does not go "beyond all possible bounds of decency." Arsham, 85 F.Supp.3d at 850 (quoting Harris, 380 A.2d at 614). Accordingly, Plaintiffs fail to state an IIED claim for which relief may be granted.

As to Plaintiffs' NIED claim, Maryland courts do "not recognize an independent tort for negligent infliction of emotional distress." Miller v. Bristol-Myers Squibb Co., 121 F.Supp.2d 831, 839 (D.Md. 2000); see also Harry & Jeanette Weinberg Found., Inc. v. St. Marks Ave., LLC, No. GLR-15-3525, 2018 WL 704866, at *5 (D.Md. Feb. 5, 2018) ("NIED is not a cognizable claim under Maryland law."). Accordingly, the Court will dismiss Count V in its entirety.

### iv.      Count VI: Breach of Contract

Plaintiffs next assert a claim against Defendants for breach of contract. "To state a claim for breach of contract, the plaintiff must show that the defendant owed him a contractual obligation and that the defendant breached that obligation." All Weather, Inc. v. Optical Sci., Inc., 443 F.Supp.3d 656, 666 (D.Md. 2020). Further, "[t]he claim must 'allege with certainty and definiteness facts showing a contractual obligation.'" Yarn v. Hamburger L. Firm, LLC, No. RDB-12-3096, 2014 WL 2964986, at *3 (D.Md. June 30, 2014) (quoting RRC Ne., LLC v. BAA Md., Inc., 994 A.2d 430, 442 (Md. 2010)).

14

Plaintiffs' breach of contract claim is apparently premised on Plaintiffs' assertion that by printing photographs at the Pharmacy, Dr. Kumar "signed and agreed into a CONTRACT with KODAK machine and [CVS]." (Pls.' Opp'n at 10). As an initial matter, this allegation does not appear in the Complaint, and Plaintiffs may not amend their Complaint through their Opposition to Defendants' Motion. See Whiting-Turner Contracting Co. v. Liberty Mut. Ins., 912 F.Supp.2d 321, 334 (D.Md. 2012) ("[I]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss." (quoting Mylan Labs., Inc. v. Akzo, N.V., 770 F.Supp. 1053, 1068 (D.Md. 1991))); see also Hurst v. District of Columbia, 681 F.App'x 186, 194 (4th Cir. 2017) (holding that "a plaintiff may not amend her complaint via briefing"). Even if it were, however, the allegation would not be sufficient to state a claim of breach of contract for which relief may be granted. A vague reference to a contract with non-party Kodak and CVS, with no specific allegations concerning what obligations the contract imposed on Defendants or how they breached those obligations, does not "allege with certainty and definiteness facts showing a contractual obligation." Yarn, 2014 WL 2964986, at *3 (quoting RRC, 994 A.2d at 442). Plaintiffs thus fail to state a claim for breach of contract and the Court will dismiss Count VI.

### v.      Counts VII & IX: Breach and Invasion of Privacy

The Complaint also includes claims against Mahone and CVS for breach of privacy (Count VII) and invasion of privacy (Count IX). These counts appear to be synonymous. They are also, however, ambiguous, as the courts have recognized "four different types of the tort of invasion of privacy: 1) unreasonable intrusion upon the seclusion of another, 2)

unreasonable publicity given to another's private life, 3) publicity that unreasonably places another in a false light before the public, and 4) appropriation of another's name or likeness." Barnhart v. Paisano Publications, LLC, 457 F.Supp.2d 590, 593 (D.Md. 2006). In order to construe the Complaint in the light most favorable to Plaintiffs, the Court will review Plaintiffs' claims under each of the possible torts.

The fourth invasion of privacy tort, appropriation of another's name or likeness, is plainly irrelevant here. But the Complaint also fails to state a claim under any of the remaining torts. With respect to the second and third forms of invasion of privacy, Plaintiffs cannot state a claim because the Complaint fails to include any allegation that Defendants made any efforts to publicize the photographs Mahone took from Dr. Kumar. Indeed, Plaintiffs concede in their Opposition that they "do not know what [Mahone] did with them . . . . No one knows." (Pls.' Opp'n at 8).

As to Plaintiffs' intrusion upon seclusion claim, under Maryland law, the "elements of the tort are an intentional intrusion upon another person's solitude, seclusion, private affairs, or concerns in a manner that would be highly offensive to a reasonable person." Gamble v. Fradkin & Weber, P.A., 846 F.Supp.2d 377, 383 (D.Md. 2012). "[T]he intrusion on seclusion tort deals with the manner in which Defendant obtained the information rather than the truth or falsehood of the information itself." Payne v. Ford Motor Credit Co., No. SAG-20-00034, 2020 WL 5250287, at *5 (D.Md. Sept. 3, 2020) (quoting Trundle v. Homeside Lending Inc., 162 F.Supp.2d 396, 401 (D.Md. 2001)). Thus, "the gist of the offense is the intrusion into a private place or the invasion of a private seclusion that the plaintiff has thrown about his person or affairs." Pemberton v. Bethlehem

Steel Corp., 502 A.2d 1101, 1116 (Md.Ct.Spec.App. 1986). "In addition, plaintiff must have a reasonable expectation of privacy in the source of the information." Trundle, 162 F.Supp.2d at 401. Moreover, "[t]here is . . . no liability unless the interference with the plaintiff's seclusion is a substantial one, of a kind that would be highly offensive to the ordinary reasonable man, as the result of conduct to which the reasonable man would strongly object." Restatement (Second) of Torts § 652B (Am.L.Inst. 1977). If the intrusion is "conducted in a reasonable and non-obtrusive manner, it is not actionable." Pemberton, 502 A.2d at 1117.

Here, Plaintiffs' intrusion upon seclusion tort appears to be premised on Mahone taking photographs that Dr. Kumar had printed at the Pharmacy but not yet purchased. Even assuming for the sake of argument that Dr. Kumar had a reasonable expectation of privacy in his photographs—an uncertain conclusion given that Dr. Kumar had yet to purchase them—in the absence of any additional information regarding the photographs, the Court finds that Plaintiffs have failed to allege that an ordinarily reasonable person would find it highly offensive for Mahone to take them. Accordingly, Plaintiffs fail to state a claim for invasion of privacy and the Court will dismiss Counts VII and IX.

### vi.        Counts VIII & XI: Obstruction of Justice

Plaintiffs assert claims against all Defendants for obstruction of justice (Counts VIII & XI). As Defendants correctly note, however, obstruction of justice is not a cognizable civil claim. See Kennedy v. Fresenius Med. Care N. Am., No. CCB-11-3738, 2012 WL 4378165, at *3 (D.Md. Sept. 24, 2012) ("The statutes [Plaintiff] has cited are criminal, not civil, and therefore confer no private cause of action on individual litigants."); Livingston

v. Jones, No. 219, Sept. Term 2018, 2019 WL 2152924, at *2 (Md.Ct.Spec.App. May 16, 2019) ("[T]here is no civil cause of action in Maryland for obstruction of justice."). Although Plaintiffs insist that their allegations of obstruction of justice "turn[] this civil matter to a criminal one," (Pls.' Opp'n at 11), "[i]ndividual litigants, like [Plaintiffs], cannot initiate federal criminal prosecution based on their allegations of unlawful conduct," Kennedy, 2012 WL 4378165, at *3. Accordingly, Plaintiffs fail to state a claim for obstruction of justice and the Court will dismiss Counts VIII and XI.

### vii.    Counts X & XII: Libel by Deluca and Sedgwick

Plaintiffs next assert claims for libel against Deluca and Sedgwick (Counts X & XII).[8] As set forth supra in Section II.A.2.b.ii, plaintiffs seeking to state a claim for defamation in Maryland must allege "(1) the defendant made a defamatory statement to a third person (a requirement known as publication); (2) the statement was false; (3) the defendant was legally at fault in making the statement; and (4) the plaintiff thereby suffered harm." Johns Hopkins Health, 274 F.Supp.3d at 365.

Defendants assert that Plaintiffs cannot state a claim for defamation because the allegedly libelous claims Deluca made about Dr. Kumar—that Dr. Kumar was "abusive" and that an email Dr. Kumar sent to Deluca contained a virus—were made to Plaintiffs' then-attorney. (See Compl. at 6). Defendants argue that statements of this nature, made to Dr. Kumar's attorney, cannot qualify as a publication to a "third person" as required by

---

[8] Plaintiffs label Count XII as "False and Fraudulent Allegation." (See Compl. at 6). However, no such cause of action exists in Maryland, and the allegations contained in Count XII appear to comprise the substance of Plaintiffs' defamation claims against Deluca and Sedgwick. (See id.).

Maryland law. (See Reply Br. Supp. Defs.' Mot. Dismiss Pls.' Compl. Alt. Mot. More Definite Statement & Strike Impertinent, Immaterial & Scandalous Allegations ["Defs.' Reply"] at 9, ECF No. 37 (noting that Plaintiffs have not alleged a "publication to a third-party who is not Plaintiffs' attorney")).

The Court has identified no decisions by Maryland courts concerning whether a statement to an attorney for an allegedly defamed party can constitute a publication for the purposes of a defamation claim. Nonetheless, the weight of authority from courts in other states supports Defendants' argument. See, e.g., Swanson v. Baker & McKenzie, LLP, 527 F.App'x 572, 574 (7th Cir. 2013) ("[T]he statements [Plaintiff] attributes to [Defendant] were made to her own agent . . . which does not qualify as a third party for defamation purposes."); Snyder v. Ag Trucking, Inc., 57 F.3d 484, 489–90 (6th Cir. 1995) ("[P]ublication to plaintiff's attorney is not publication to a third party, at least when the communication pertains to the matter for which the attorney was retained."); Gibson v. Boy Scouts of Am., 360 F.Supp.2d 776, 783 (E.D.Va. 2005) (denying defamation claim based on "words exchanged between the parties' lawyers regarding Plaintiff's candor with his own lawyer because communication between two lawyers regarding the conduct of a client of one of the lawyers is absolutely privileged when relevant to an underlying dispute between the parties"), aff'd, 163 F.App'x 206 (4th Cir. 2006); Davis v. Progressive Universal Ins., No. 3:20-CV-00947-JR, 2020 WL 8813621, at *4 (D.Or. Oct. 13, 2020) (finding that publication element of defamation claim could not rest on "offensive statements . . . made to plaintiff's attorney for the purposes of settlement"), rep. and recommendation adopted, No. 3:20-CV-00947-JR, 2021 WL 886216 (D.Or. Mar. 9, 2021);

Bronitsky v. Bladen Healthcare, LLC, No. 7:12-CV-147-BO, 2013 WL 5327447, at *2 (E.D.N.C. Sept. 20, 2013) ("[S]ettlement communications from defendants' counsel to plaintiff's counsel are subject to an absolute privilege."); Hickman v. State Farm Prop. & Cas. Ins., No. 3:17-CV-00184-CRS, 2017 WL 5892212, at *3 (W.D.Ky. Nov. 29, 2017) (finding that plaintiff could not state a claim for defamation based on "publication of allegedly defamatory statements made to a plaintiff's attorney"); Catalyst Pharms., Inc. v. Fullerton, No. 16-25365-CIV, 2017 WL 6558397, at *7 (S.D.Fla. Aug. 8, 2017) ("[A] statement made to a party's attorney is practically indistinguishable from a statement made to the party itself."). The Court finds the reasoning in these decisions persuasive. Accordingly, the Court finds that were Maryland courts to consider the question, they would concur with Defendants that statements made to a plaintiff's attorney concerning the matter for which the attorney was retained may not constitute a "publication" for the purposes of a defamation claim. The Court thus finds that Plaintiffs have failed to plausibly allege this element of their claims for libel. Accordingly, Plaintiffs have failed to state a claim for libel against Deluca or Sedgwick and the Court will dismiss Counts X and XII.

### viii.     Count XIII: Contempt

Plaintiffs' last claim is for "contempt." Defendants argue that this claim must fail because there is no private right of action for civil contempt. The Court need not make such a finding to determine that Plaintiffs' claim is subject to dismissal. In the Complaint, Plaintiffs' only reference to the source of the alleged contempt is Deluca and Sedgwick's alleged refusal to respond to three demand letters and two "cease and desist notices." (Compl. at 6). But the cease-and-desist notices at issue came from Plaintiffs, not this or

any other court or, for that matter, any other judicial, administrative, or regulatory authority. Plaintiffs cite no support for their apparent assertion that an entity's refusal to respond to a demand letter or comply with a private individual's cease-and-desist notice can give rise to an action for contempt, and the Court is unaware of any such authority.

In their Opposition, Plaintiffs argue that the contempt in question violated 20 U.S.C. § 1234. Section 1234 empowers the U.S. Secretary of Education to create an Office of Administrative Law Judges with the power to, inter alia, conduct cease-and-desist hearings. The statute also authorizes the Secretary to issue cease-and-desist orders to educational institutions the Secretary finds are failing to comply with relevant law. See 20 U.S.C. § 1234e. The statute bears no relation to the facts at issue in this case and does not provide support for Plaintiffs' claim for contempt. The Court therefore finds that Plaintiffs have failed to state a claim for which relief may be granted and will dismiss Count XIII.

**B.**   **Plaintiffs' Motion**

**1.**   **Standard of Review**

In reviewing a motion for summary judgment, the Court views the facts in a light most favorable to the nonmovant, drawing all justifiable inferences in that party's favor. Ricci v. DeStefano, 557 U.S. 557, 586 (2009); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986) (citing Adickes v. S.H. Kress & Co., 398 U.S. 144, 158–59 (1970)). Summary judgment is proper when the movant demonstrates, through "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers, or other materials," that "there is no genuine dispute as to any material fact and the movant

21

is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a), (c)(1)(A). Significantly, a party must be able to present the materials it cites in "a form that would be admissible in evidence," Fed.R.Civ.P. 56(c)(2), and supporting affidavits and declarations "must be made on personal knowledge" and "set out facts that would be admissible in evidence," Fed.R.Civ.P. 56(c)(4).

Once a motion for summary judgment is properly made and supported, the burden shifts to the nonmovant to identify evidence showing that there is a genuine dispute of material fact. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586–87 (1986). The nonmovant cannot create a genuine dispute of material fact "through mere speculation or the building of one inference upon another." Othentec Ltd. v. Phelan, 526 F.3d 135, 140 (4th Cir. 2008) (quoting Beale v. Hardy, 769 F.2d 213, 214 (4th Cir. 1985)).

A "material fact" is one that might affect the outcome of a party's case. Anderson, 477 U.S. at 248; see also JKC Holding Co. v. Wash. Sports Ventures, Inc., 264 F.3d 459, 465 (4th Cir. 2001) ("The existence of an alleged factual dispute between the parties will not defeat a properly supported motion for summary judgment, unless the disputed fact is one that might affect the outcome of the litigation."). Whether a fact is considered to be "material" is determined by the substantive law, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson, 477 U.S. at 248; accord Hooven-Lewis v. Caldera, 249 F.3d 259, 265 (4th Cir. 2001). A "genuine" dispute concerning a "material" fact arises when the evidence is sufficient to allow a reasonable jury to return a verdict in the nonmoving party's favor. Anderson, 477 U.S. at 248. If the nonmovant has failed to make

22

a sufficient showing on an essential element of his case where he has the burden of proof, "there can be 'no genuine [dispute] as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex Corp. v. Catrett, 477 U.S. 317, 322–23 (1986) (quoting Fed.R.Civ.P. 56(c)).

> **2.      Analysis**

Plaintiffs' Motion for Summary Judgment fails entirely to identify material facts about which there is no dispute and which entitle Plaintiffs to summary judgment. Because the Complaint fails to state a claim for which relief may be granted, they could not do so. Accordingly, Plaintiffs' Motion will be denied.

### III.      CONCLUSION

For the foregoing reasons, the Court will grant Defendants' Motion to Dismiss for Failure to State a Claim pursuant to Fed. R. Civ. P. 12(b)(6) (ECF No. 30), and deny Plaintiffs' Motion for Summary Judgment (ECF No. 39). A separate Order follows.

Entered this 31st day of January, 2022.


_____/s/_____
George L. Russell, III
United States District Judge

23